Yes, good morning, Your Honors. My name is Michael Maher and I represent the petitioner. I wish to reserve two minutes for rebuttal. This case concerns the I'm sorry, Counsel, I didn't hear your name. What is it? Michael Maher. Michael Maher. Very well. Thank you very much, Mr. Maher. This case concerns the aggravated felony bar to 212H relief. Fortunately, less than a year ago, this Court, the Ninth Circuit in Sum v. Holder, construed the aggravated felony bar to 212H relief the same way that our sister circuits, the Fifth Circuit in Martinez and the Eleventh Circuit in Lanier v. Holder, construed the aggravated felony bar. All three decisions were based on the unambiguous words of 212H, namely Chevron Step 1. For this reason, this Court does not need to defer to a matter called Genevic, a BIA decision. The problem with the government's construction of the aggravated felony bar to 212H is that the way they construe this bar, it renders totally superfluous the phrase, quote, previously been admitted to the United States, unquote. This, of course, violates the cardinal rule of statutory construction that a court should endeavor to give effect to every word and phrase in a statute, unless it would be patently absurd. Sotomayor, could you go back to Sum for a minute? Yes. First of all, other than Sum, our case law generally treats admission or becoming a lawful permanent resident as an admission. Is that right? Well, there's two ways to become a permanent resident. One is entry at the board or adjustment of status. Well, it depends on the context in which the phrase arises. If a person enters illegally and then gets adjustment of status and then is charged with a deportable offense, this Court in Ocampo-Duron says that that person has been admitted because they've had an adjustment of status and there was no prior adjustment. So to avoid an absurd result, this Court in Ocampo-Duron said that there is an admission. But the unique text of the aggravated felony bar in 212H incorporates 101A.13, the admission statute, what admission means, and 101A.20, which is what lawful permanent resident status means. But why would Congress distinguish between different classes of LPRs when defining classes excluded under 212H? Okay. An LPR is an LPR. What's the difference? Well, why would they make a distinction? Well, both the Fifth Circuit in the decision by Judge Barksdale and the Eleventh Circuit in Lanier said that Congress might have rationally concluded that aliens who adjusted post-entry were more deserving candidates because often they have lived in the United States for numerous years before adjustment, or Congress could have been taking an incremental approach. You know, prior to 1996, the only bar to 212H relief was if somebody had been convicted of murder or a criminal offense involving torture or an attempt or conspiracy to commit those offenses. That was the only bar prior to 1996. That bar is still in the statute. Now, 212H, as enacted in as amended in 1996, did not exclude nonpermanent residents from this form of relief, and that's been upheld by this Court and all other circuits against an equal protection challenge. So illegal aliens are able to utilize this form of relief. So the fact that there's a distinction between two types of permanent residents, how they entered, and how they obtained their permanent resident status is not patently absurd. Some, it seems to me, I don't understand how it supports you. In fact, in some, they did divide up the two sections, but not the way you want to divide them up. The guy in some didn't, in fact, cross the border, as I understand it. He was and throughout the opinion, the assumption is that his admission was, as a long-form permanent resident, nothing else, that there was no crossing of the border. And instead, they divided the two sections up as procedural and substantive, not as crossing the border versus not crossing the border. Is that accurate? Well, he did divide up the two sections as procedural and substantive, and the Court did not cross the border. And this guy did not cross the border, in fact. So. Well, he had to have crossed the border in order to be in the United States. Yes, but that wasn't the basis of anything. The assumption was that his admission was at the time, his admission for purposes of the first phrase was at the time he adjusted status, but that he did so procedurally, properly, although substantively improper. Correct. So sum seems to have nothing to do with this. The hell to do it. If anything, it hurts. Well, it, it, it, this sum versus holder is not exactly on point because it doesn't discuss the exact same issues in this case, but, but. It doesn't assume that the admission for purposes of the first phrase was his adjustment status, not intentionally. I believe that's correct, Your Honor. So on that basis, then, why don't we lose instead of win? Well, because, well, if you follow the logic of the Fifth Circuit decision and the Eleventh Circuit decision. I understand that, but I'm looking at our law. Okay. Well, well, we, we also have to look at Shiverman. Shiverman, which was cited in the opening brief, which says that the primary controlling statute to define admission is 101A13 and not 101A20, that 101A20, which is the definition of adjustment of lawful. And that leads to my next question, which is that the new opinion in Ali A is a C, which tries to make some sense out of that. That's correct. I essentially agree with the last case you were talking about, Shiverman. I'm slightly tweaked theory, but it's certainly consistent with it. So why don't we defer to LIEI Z, which essentially says, for all purposes, adjustment of status is admission. Well, because you know, because the language of 212H is remarkably different than the language of other statutes. The deportability ground depends on admitted to the United States. The 212H language has a redundant phrasing where it talks about previously been admitted to the United States as a lawful permanent resident. Based on just the language of 212H, can there be more than one date of admission? Well, it depends whether you can be more than one date of admission if a person – well, no, I think there would only be one date of admission. That's your position, but is that necessary by the plain language of the statute? Well, yes. Well, you know, you have to look at the context in which the relief statute is discussed. So for purposes of deportability, admission has been determined if there was an illegal entry, but later a post-entry adjustment, there is considered an admission. Otherwise, it would create an absurd result. But no absurd result is created to find eligibility for 212H relief in this case because of the wording of the statute and the plain language of the statute. In your interpretation, in this case, your client came originally legally. But suppose he had come originally illegally. That's correct. And that's a distinction. I'm sorry? And that's a distinction between our case and a matter called Genovit. I can't understand why it makes a difference on your reading of the statute. Why would it matter? Well, I don't think it does matter. I think the aggravated felony bar to 212H, it wouldn't matter if a person came in illegally. That was the situation in Lanier. It wouldn't be an exception, right? Because he still wouldn't have been previously admitted to the United States as an alien lawfully admitted for permanent residence. Exactly. Admission has to be separate from the law, from the adjustment of status. Exactly. So people who came across illegally would also. Yes. I think my time is up. Your time has expired, counsel. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court. Laura Halliday Hicken for Attorney General Eric Holder. In this case, the Court should construe adjustment of status as an admission consistent with both the governing court and board precedent. Indeed, this Court has already found that adjustment of status is a lawful admission to the United States, and it has expressly rejected construing admission as exclusively entry into the United States. Counsel, what's the role of the Colgenovit case as you look at it? You heard it referred to several times by your opposing counsel. Colgenovit was yes. Colgenovit addressed 212H and specifically looked at whether adjustment of status is an admission that would qualify an alien for the bar. In that case, it was the continuous residence. But the same idea is a single statutory term should be construed consistently, and that's what the board's emphasis is, that adjustment of status. And this is also emphasized, again, in matter of elegy, that adjustment of status is either an admission in all cases or it's not. It can't be on a provision-by-provision basis introducing inconsistency and incoherence into the statute. Are you arguing for Chevron deference in this case based on Colgenovit or alien? Yes. In this case, the board's precedential opinions are entitled to deference. Matter of Rosas is the case, the board precedent that the board relied on below. That's not this statute. Right. That's true. Colgenovit and elegy are also board decisions that should be received deference. Wait. Those two cases are both this statute. Is that right? Matter of elegy is 237. It's the same as Chevron. In that case, it's helpful. So Chevron was also operating under the assumption that adjustment of status is an admission. The question in Chevron is which admission? And an alien can certainly have multiple because you could be admitted repeatedly under that deference. Why do we owe deference here? This is merely a question of statutory construction, looking at 212H. And we could read statutes as well, maybe better than the BIA can read them. Well, the board has expertise in interpreting immigration. And they don't have expertise in statutory construction. We do. Well, they're interpreting the INA, which is their expertise. But in addition, even if the board was only found persuasive, construing adjustment of status as an admission is consistent with all of this Court's precedent. The Court has never held that adjustment of status is not an admission. It is. The strongest argument, it seems to me, against Hewitt, which is based on this particular statute, is that admitted is used two different times in the court. Yes. And actually, some of the older is helpful in this case because it does explain why the Congress might have chosen to use the language in such a way. Because adjustment of status, a lawful admission as a permanent resident, implies both the actual bestowal of the status as well as a substantively lawful bestowal of the status. If Congress had written only, you know, the bar applies to aliens lawfully admitted as permanent residents, an alien could make the argument that they, because they obtained their LPR status through fraud, are not lawfully admitted, substantively lawfully admitted. But by using the language admitted as an alien lawfully admitted, it shows that it's simply a procedurally regular admission. It doesn't matter whether the alien was actually entitled to the lawful status or not. Some versus Holder established that there are two distinct phrases in 212H. And how could we give each phrase any meaning if we do not say that without rendering the entire thing redundant and concluding that 212 does not apply here? Well, that the two separate phrases, as they were divided in sum, deal with procedurally regular and substantively lawful admissions, and that 212H requires a procedurally regular admission as an LPR. Not that we go along with you, we're going to create a circuit split, and I'm sure you're going to be a Supreme Court case. Right. So you are essentially asking us to do that, and the question is, if we prefer not to, why should we? The government's position is that the Fifth and the Eleventh Circuit's analysis of 212H was wrong, ultimately. It evaluated the statute in even single terms in isolation without regard to the statutes that provisions role in the governing statute as a whole, without regard to the results that would result, and ultimately that is how the Supreme Court has instructed the Court not to evaluate provisions. They have to be evaluated in the context of the INA as a whole. If we gave no deference to the BIA and we were just construing it as they construed it, different than they could, what would be wrong with that? Why would it be unreasonable to construe that there are two separate provisions here? Admitted means admitted at the time you were admitted, originally at the port of entry, and it doesn't mean that you had your adjustment of status changed. This Court has repeatedly held that admission is not exclusively defined by admission at the border. So admission or by entrance at the border. Admission is itself ambiguous to an extent because it requires. Well, there's a definition of admission in this case, though. That's the difference. In this case, we have an admission as to – is actually defined for us as admission at the border. But there's no reason to believe that 101A13 was intended to be the exclusive definition of admission. And clearly this Court's precedent recognizes that because this Court has found a number of things outside of admission at the border to qualify. Well, this is an exclusive definition, unlike most statutes where the statute says except where context means otherwise, the definitions hold. In this case, the definitions say the definition is this, and it says not anything about other contexts. Right. But it doesn't say exclusively, and it doesn't deal with and it doesn't purport to deal with adjustment of status. Adjustment of status relief was created well before this 101A13 definition of entry. And it – back as far as, you know, 1992, the Board was saying that adjustment of status is a functional equivalent of admission. Indeed, the Attorney General is ordered to record the alien's lawful date of admission as of the date of the adjustment of status. It was contemplated to be an alternative means of obtaining a mission that didn't require the alien to leave and reenter. I mean the – But that phrase that we're talking about uses the word admitted. So if admitted couldn't mean this, then it would be a nonsensical phrase. In other words, what it says is an alien lawfully moved from permanent residence, and that is separately defined. Admitted is defined in the statute also, but they would be at odds with each other if it couldn't mean adjustment of status. And this is why it's critical to use a contextual reading of the INA as a whole. The INA contemplates that adjustment of status is an admission. It's how the entire immigration system is structured. Admission gives aliens certain procedural protections. If you're not admitted, you don't receive those. And so it's critical that adjustment of status be an admission in order to coherently apply the INA. As Your Honor mentioned in the matter of Kuljinovic, in that case, you know, the alien had entered illegally and had then adjusted their status. And so Petitioner's counsel argues that, well, that was just to avoid an absurd result in that case. But the Board has emphasized that a single statutory term, such as adjustment of status, must be construed consistently. And in the matter of Eliasgi, has held that in all cases, this is the case, that there can't be a piecemeal approach, provision by provision, where that would lead to uncertainty and unpredictability. And in 212H, it could raise equal protection constitutional doubts because an LPR is a substantively the identical status whether you adjust or whether you cancel a process. The status is identical. Well, no. There's a difference. The Eleventh Circuit pointed out if someone is here for a long time as a legal you know, there's a difference that can be made between someone who's admitted at the Board or someone who's admitted later on. No. It's simply the procedural mechanism. You don't know how long any of them are. That's not you know, that could be case by case. But the procedural mechanism by which you would either adjust or cancel a process gives you a substantively identical status. And so to treat aliens differently on the basis of the procedural mechanism by which they obtained the substantively identical status would potentially cause equal protection concerns. Well, aren't people admitted as lawful permit residents? Pardon me? Are people admitted meaning before they get here, they have lawful permit residence?  No. Well, when they cancel a process, they're seeking lawful permanent residence status at the border. So once they're admitted, literally like cross the border as a lawful permanent resident. Isn't it also possible that some people who are LPRs and leave, when they come back they're admitted as an LPR? No. People who are LPRs and leave are treated as returning residents as if they had already been admitted. They're treated as having a previous admission. They're not seeking admission. What would you say of them if they were admitted as LPRs? When they return, they return as returning residents, as returning LPR residents. They're not seeking admission. They're not asked as applicants of admission, unless there are certain circumstances whereby her circumstance, actually, where she had committed a crime and so she did in the end have to, you know, if you're gone for longer than 180 days or if you committed certain offenses, you are treated as an applicant for admission. But that's unusual. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Cowen, Berzon